IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT-LAUDERDALE DIVISION

| | | |
|---|---|---|
| Sasha Fulks, | ) | CIVIL ACTION NO._____ |
| | ) | <u>COMPLAINT</u> |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMAND |
| Wal-Mart Associates, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 to correct unlawful national origin-based employment practices and retaliatory employment practices, and to provide relief to Plaintiff Sasha Fulks who was adversely affected by such practices. As alleged with greater specificity below, Defendant, Wal-Mart Associates, Inc., subjected Plaintiff Sasha Fulks to discrimination and terminated her employment in retaliation for opposing said discrimination.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Section 703 of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e-2.

2. The unlawful employment practices alleged in this Complaint were committed within the jurisdiction of the United States District Court for the Southern District of Florida.

3. Therefore, in accordance with 28 U.S.C. §1391 and 42 U.S.C. §2000(e)-2, venue is appropriate in this Court.

## PARTIES

4. Plaintiff, Sasha Fulks ("Fulks"), was an employee of Defendant Wal-Mart Associates, Inc., and resides in Broward County, Florida and the cause of action accrued in the jurisdiction of the United States District Court for the Southern District of Florida.

5. Defendant, Wal-Mart Associates, Inc. ("Defendant" or "Defendant Wal-Mart"), provides retail services in Palm Beach County, Florida, and Broward County, Florida and employed Plaintiff Fulks.

6. At all relevant times, Defendant has continuously been doing business in the State of Florida and has continuously had at least 15 employees.

7. At all relevant times, Defendant has been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). At all relevant times, Defendant has continuously been an employer within the meaning of 42 U.S.C. §2000e (b).

## CONDITIONS PRECEDENT

8. Plaintiff Fulks has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Plaintiff Fulks timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against Defendant Wal-Mart. Pursuant to a work sharing agreement, the Charge was dual filed with the Florida Commission on Human Relations (FCHR).

9. The EEOC sent Plaintiff Fulks a Notice of Right to Sue on or about March 19, 2020. Plaintiff Fulks timely commenced this action.

STATEMENT OF FACTS

10. Plaintiff Fulks is an individual who is Jamaican.

11. On or about July 2016, Plaintiff Fulks began employment in Defendant Walmart's pharmacy as a pharmacy technician.

12. On or about August 9, 2016, Plaintiff Fulks' car keys went missing and Plaintiff Fulks informed Assistant Store Manager Fabiola Paulo (Haitian) of that fact. Ms. Paulo did nothing to remedy the situation because Plaintiff Fulks is Jamaican.

13. In fact, when Plaintiff Fulks went to Ms. Paulo's office and questioned Ms. Paulo about whether she knew who had her car keys, Ms. Paulo said she did not know and told another manager in the office to close the office door.

14. However, Ms. Paulo *did* know who had Plaintiff Fulks' keys because a female co-worker had told Ms. Paulo that she found car keys that day.

15. On that day, Plaintiff Fulks' shift ended at 9:00 pm and she had to wait until midnight for her husband to arrive to Defendant Wal-Mart's store with her spare car keys so that she could leave.

16. Plaintiff Fulks' keys were returned to her by pharmacy manager, Kimberly Sherman, three days later.

17. On the same day that Plaintiff Fulks' car keys went missing, on or about August 9th, Plaintiff Fulks called Defendant's Ethics Helpline to make a complaint that Ms. Paulo discriminated against her in the handling of the car keys incident.

18. Between approximately August 9, 2016 and the end of December 2016, Plaintiff Fulks made several phone calls to Defendant's Ethics Helpline about further incidences of Ms. Paulo's discrimination against Plaintiff Fulks.

19. On one occasion, Plaintiff Fulks called the ethics hotline to complain about Ms. Paulo encouraging other workers to call Plaintiff Fulks derogatory names and speak to Plaintiff Fulks in a derogatory manner.

20. Defendant's Ethics Helpline did nothing to remedy Ms. Paulo's discrimination; therefore Plaintiff Fulks was forced to seek a transfer to another store of Defendant, Store #3858.

21. Prior to the transfer, district manager, Greg Nazareth, spoke with Plaintiff Fulks about her complaints against Ms. Paulo and Mr. Nazareth specifically told Plaintiff Fulks she should just quit because he will not approve her transfer to Store #3858.

22. Plaintiff Fulks then contacted Brandi Vosberg, the district manager of Store #3858, to get approval for the transfer.

23. Ms. Vosberg made Plaintiff Fulks write a letter requesting the transfer and then Ms. Vosberg subsequently approved Plaintiff Fulks' transfer to Store #3858.

24. The pharmacy manager at Store #3858, Jermaine Smith (Bahamian), has discriminatory animus towards Jamaicans.

25. After Plaintiff Fulks transferred to Store #3858, Assistant Manager Jennifer Lopez told Plaintiff Fulks that she noticed that Plaintiff Fulks is being targeted a lot for reprimands by Mr. Smith and Ms. Lopez told Plaintiff Fulks to be careful.

26. Pharmacist Wesley, a Haitian male, was specifically told by Mr. Smith that Mr. Smith does not hire Jamaicans because "they are lazy." Mr. Smith knew Plaintiff Fulks was standing nearby when he said it and he clearly wanted Plaintiff Fulks to hear him.

27. Mr. Smith also called Plaintiff Fulks a "loud mouth Jamaican" on or about November 2018.

28. On or about November 2018, Mr. Smith, while at Defendant's work place near Plaintiff Fulks, said Jamaica was the worst island in the Caribbean.

29. Mr. Smith, in his effort to have Plaintiff Fulks' employment terminated due to her national origin, began to give baseless Written Coachings to Plaintiff Fulks.

30. On or about the Fall of 2018, Ms. Paulo was transferred to Store #3858 too.

31. On or about the first week of December 2018, a customer came to the Pharmacy so early that the registers had no money in them. Thus, Defendant employee, Rochelle Lucien, ordered Plaintiff Fulks to walk the customer to register 11 which is in Wal-Mart's store and not in the pharmacy.

32. Ms. Lucien also told Plaintiff Fulks to go get money for the pharmacy register after Plaintiff Fulks walked the customer to register 11.

33. Plaintiff Fulks did as she was ordered and walked the customer to register 11 and then got money for the pharmacy register.

34. That was the end of the situation and Plaintiff Fulks did not hear about the issue again for approximately two weeks.

35. Consequently, Plaintiff Fulks was surprised on or about December 14, 2018 when a person who does _not_ manage the pharmacy and whom Plaintiff Fulks did not have much interaction with, Assistant Store Manager R.D., called her to a back room to tell her that her employment was terminated because she tried to have a customer serviced at register 11 and that Plaintiff Fulks allegedly was rude to the other associate at register 11. Ms. Lopez witnessed this conversation.

36. Plaintiff Fulks told R.D. that walking customers to register 11 was common, that Ms. Lucien is the one who instructed her to do so, and she was not rude to anyone.  Also, Plaintiff

Fulks asked R.D. what is rude about bringing a customer to register 11, considering it is common practice among the employees.

37. Plaintiff Fulks then asked to speak to her manager, Mr. Smith, at which point R.D. became aggravated.

38. After her employment was terminated, Plaintiff Fulks called the Defendant's human resources department and spoke to Jennifer Woolsey who opened an investigation and told Plaintiff Fulks that the reason for her termination was allegedly because she was rude to the employee at register 11 and that the termination stands.

39. Defendant's excuse for terminating Plaintiff Fulks' employment is pre-textual and Plaintiff Fulks' employment was terminated due to Plaintiff's national origin and in retaliation for opposing national origin discrimination.

40. After Ms. Woolsey finalized Plaintiff Fulks' employment termination, Defendant changed its pre-textual excuse for terminating Plaintiff Fulks' employment.

41. Defendant's changed pre-textual excuse is the false claim that Plaintiff Fulks cut in line in front of three customers to purchase personal items on or about December 14, 2018.

42. Defendant's *changed* excuse for terminating Plaintiff Fulks' employment is pre-textual and Plaintiff Fulks' employment was terminated due to Plaintiff's national origin and in retaliation for resisting national origin discrimination.

43. R.D. terminated Plaintiff Fulks' employment based on information he received from Mr. Smith and Ms. Paulo who both sought to terminate Plaintiff Fulks' employment because she is Jamaican and both sought to terminate Plaintiff Fulks' employment because she opposed national origin discrimination.

44. At all times material, R.D., Fabiola Paulo, Jermaine Smith, Rochelle Lucien, Greg Nazareth, Jennifer Lopez, Orderline Excellent, Keisha, Dee, DJ, Valerie, Wesley, Jennifer Woolsey, Defendant's human resources, and Defendant's Ethics Helpline were acting within the scope of their employment with Defendant Wal-Mart.

## COUNT I
## NATIONAL ORIGIN DISCRIMINATION
### (Termination)

45. Plaintiff Henry incorporates the allegations contained in the preceding paragraphs 1-9 as if fully set forth herein.

46. Plaintiff Fulks is of Jamaican national origin.

47. Plaintiff Fulks was the victim of discrimination on the basis of her national origin in violation of Title VII of the Civil Rights Act.

48. On or about July 2016, Plaintiff Fulks began employment in Defendant Walmart's pharmacy as a pharmacy technician.

49. On or about August 9, 2016, Plaintiff Fulks' car keys went missing and Plaintiff Fulks informed Assistant Store Manager Fabiola Paulo (Haitian) of that fact.  Ms. Paulo did nothing to remedy the situation because Plaintiff Fulks is Jamaican.

50. In fact, when Plaintiff Fulks went to Ms. Paulo's office and questioned Ms. Paulo about whether she knew who had her car keys, Ms. Paulo said she did not know and told another manager in the office to close the office door.

51. However, Ms. Paulo *did* know who had Plaintiff Fulks' keys because a female co-worker had told Ms. Paulo that she found car keys that day.

52. On that day, Plaintiff Fulks' shift ended at 9:00 pm and she had to wait until midnight for her husband to arrive to Defendant Wal-Mart's store with her spare car keys so that she could leave.

53. Plaintiff Fulks' keys were returned to her by pharmacy manager, Kimberly Sherman, three days later.

54. On the same day that Plaintiff Fulks' car keys went missing, on or about August 9th, Plaintiff Fulks called Defendant's Ethics Helpline to make a complaint that Ms. Paulo discriminated against her in the handling of the car keys incident.

55. Between approximately August 9, 2016 and the end of December 2016, Plaintiff Fulks made several phone calls to Defendant's Ethics Helpline about further incidences of Ms. Paulo's discrimination against Plaintiff Fulks.

56. On one occasion, Plaintiff Fulks called the ethics hotline to complain about Ms. Paulo encouraging other workers to call Plaintiff Fulks derogatory names and speak to Plaintiff Fulks in a derogatory manner.

57. Defendant's Ethics Helpline did nothing to remedy Ms. Paulo's discrimination; therefore Plaintiff Fulks was forced to seek a transfer to another store of Defendant, Store #3858.

58. Prior to the transfer, district manager, Greg Nazareth, spoke with Plaintiff Fulks about her complaints against Ms. Paulo and Mr. Nazareth specifically told Plaintiff Fulks she should just quit because he will not approve her transfer to Store #3858.

59. Plaintiff Fulks then contacted Brandi Vosberg, the district manager of Store #3858, to get approval for the transfer.

60. Ms. Vosberg made Plaintiff Fulks write a letter requesting the transfer and then Ms. Vosberg subsequently approved Plaintiff Fulks' transfer to Store #3858.

61. The pharmacy manager at Store #3858, Jermaine Smith (Bahamian), has discriminatory animus towards Jamaicans.

62. After Plaintiff Fulks transferred to Store #3858, Assistant Manager Jennifer Lopez told Plaintiff Fulks that she noticed that Plaintiff Fulks is being targeted a lot for reprimands by Mr. Smith and Plaintiff Fulks is to be careful.

63. Pharmacist Wesley, a Haitian male, was specifically told by Mr. Smith that Mr. Smith does not hire Jamaicans because "they are lazy." Mr. Smith knew Plaintiff Fulks was standing nearby when he said it and he clearly wanted Plaintiff Fulks to hear him.

64. Mr. Smith also called Plaintiff Fulks a "loud mouth Jamaican" on or about November 2018.

65. On or about November 2018, Mr. Smith, while at Defendant's work place near Plaintiff Fulks, said Jamaica was the worst island in the Caribbean.

66. Mr. Smith, in his effort to have Plaintiff Fulks' employment terminated, began to give baseless Written Coachings to Plaintiff Fulks.

67. On or about the Fall of 2018, Ms. Paulo was transferred to Store #3858 too.

68. On or about the first week of December 2018, a customer came to the Pharmacy so early that the registers had no money in them. Thus, Rochelle Lucien ordered Plaintiff Fulks to walk the customer to register 11 which is in Wal-Mart's store and not in the pharmacy.

69. Ms. Lucien also told Plaintiff Fulks to go get money for the pharmacy register after Plaintiff Fulks walked the customer to register 11.

70. Plaintiff Fulks did as she was ordered and walked the customer to register 11 and then got money for the pharmacy register.

71. That was the end of the situation and Plaintiff Fulks did not hear about the issue again for approximately two weeks.

72. On December 14, 2018, a person who does not manage the pharmacy and whom Plaintiff Fulks did not have much interaction with, Assistant Store Manager R.D., called her to a back room to tell her that her employment was terminated because she tried to have a customer serviced at register 11.  Ms. Lopez witnessed this conversation.

73. R.D.'s excuse for terminating Plaintiff Fulks' employment is pre-textual and Plaintiff Fulks' employment was terminated due to Plaintiff's national origin.

74. R.D. terminated Plaintiff Fulks' employment based on information he received from Mr. Smith and Ms. Paulo who both sought to terminate Plaintiff Fulks' employment because she is Jamaican. Termination being the tangible employment action at issue in this Count.

75. Similarly-situated employees, not in Plaintiff's protected class of Jamaican, were more favorably treated, such as Orderline Excellent, Keisha, Rochelle Lucien, Dee, and DJ, who all sent customers to register 11 to be serviced by a cashier and their employment with Defendant was not terminated for it.

76. After Ms. Woolsey finalized Plaintiff Fulks' employment termination, Defendant changed its pre-textual excuse for terminating Plaintiff Fulks' employment.

77. Defendant's changed pre-textual excuse is the false claim that Plaintiff Fulks cut in line in front of three customers to purchase personal items on or about December 14, 2018.

78. Similarly-situated employees, not in Plaintiff's protected class of Jamaican, were more favorably treated, such as Oderline Excellent, Keisha, Rochelle Lucien, Dee, and DJ who purchased personal items at registers outside the pharmacy, yet their employment with Defendant was not terminated.

79. On numerous occasions, Oderline Excellent, Keisha, Dee and Valerie would be in line at a register outside the pharmacy and the cashier would call them to the front of the line so that their personal items could be scanned and purchased sooner. Yet, Oderline Excellent, Keisha, Dee and Valerie's employment was not terminated.

80. Plaintiff Fulks is qualified for the position of pharmacy technician.

81. As a result of the Defendant's unlawful termination based on Plaintiff Fulks' national origin, Plaintiff has suffered mental anguish and embarrassment.

82. At all times material, R.D., Fabiola Paulo, Jermaine Smith, Rochelle Lucien, Greg Nazareth, Jennifer Lopez, Dee, DJ, Keisha, Valerie, Oderline Excellent, Wesley, Jennifer Woolsey, Defendant's human resources, and Defendant's Ethics Helpline were acting within the scope of their employment with Defendant Wal-Mart.

83. Plaintiff has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

84. The EEOC issued a Notice of Right to Sue dated March 19, 2020. Plaintiff timely commenced this action.

WHEREFORE Plaintiff Sasha Fulks demands judgment against Defendant for compensatory damages, back wages, front pay, punitive damages, costs and attorneys' fees.

**COUNT II**
**RETALIATION DUE TO OPPOSING NATIONAL ORIGIN DISCRIMINATION**
**(Termination)**

85. The allegations set forth in Paragraphs 1 through 9 are re-alleged as if fully set forth herein.

86. Plaintiff Henry was the victim of retaliation due to her opposing national origin discrimination in violation of Title VII of the Civil Rights Act.

87. Plaintiff Fulks is of Jamaican national origin.

88. On or about July 2016, Plaintiff Fulks began employment in Defendant Walmart's pharmacy as a pharmacy technician.

89. On or about August 9, 2016, Plaintiff Fulks' car keys went missing and Plaintiff Fulks informed Assistant Store Manager Fabiola Paulo (Haitian) of that fact. Ms. Paulo did nothing to remedy the situation because Plaintiff Fulks is Jamaican.

90. In fact, when Plaintiff Fulks went to Ms. Paulo's office and questioned Ms. Paulo about whether she knew who had her car keys, Ms. Paulo said she did not know and told another manager in the office to close the office door.

91. However, Ms. Paulo *did* know who had Plaintiff Fulks' keys because a female co-worker had told Ms. Paulo that she found car keys that day.

92. On that day, Plaintiff Fulks' shift ended at 9:00 pm and she had to wait until midnight for her husband to arrive to Defendant Wal-Mart's store with her spare car keys so that she could leave.

93. Plaintiff Fulks' keys were returned to her by pharmacy manager, Kimberly Sherman, three days later.

94. On the same day that Plaintiff Fulks' car keys went missing, on or about August 9th, Plaintiff Fulks called Defendant's Ethics Helpline to make a complaint that Ms. Paulo discriminated against her in the handling of the car keys incident.

95. Between approximately August 9, 2016 and the end of December 2016, Plaintiff Fulks made several phone calls to Defendant's Ethics Helpline about further incidences of Ms. Paulo's discrimination against Plaintiff Fulks.

96. On one occasion, Plaintiff Fulks called the ethics hotline to complain about Ms. Paulo encouraging other workers to call Plaintiff Fulks derogatory names and speak to Plaintiff Fulks in a derogatory manner.

97. Defendant's Ethics Helpline did nothing to remedy Ms. Paulo's discrimination; therefore Plaintiff Fulks was forced to seek a transfer to another store of Defendant, Store #3858.

98. Prior to the transfer, district manager, Greg Nazareth, spoke with Plaintiff Fulks about her complaints against Ms. Paulo and Mr. Nazareth specifically told Plaintiff Fulks she should just quit because he will not approve her transfer to Store #3858.

99. Plaintiff Fulks then contacted Brandi Vosberg, the district manager of Store #3858, to get approval for the transfer.

100. Ms. Vosberg made Plaintiff Fulks write a letter requesting the transfer and then Ms. Vosberg subsequently approved Plaintiff Fulks' transfer to Store #3858.

101. The pharmacy manager at Store #3858, Jermaine Smith (Bahamian), has discriminatory animus towards Jamaicans.

102. After Plaintiff Fulks transferred to Store #3858, Assistant Manager Jennifer Lopez told Plaintiff Fulks that she noticed that Plaintiff Fulks is being targeted a lot for reprimands by Mr. Smith and Plaintiff Fulks is to be careful.

103. Pharmacist Wesley, a Haitian male, was specifically told by Mr. Smith that Mr. Smith does not hire Jamaicans because "they are lazy." Mr. Smith knew Plaintiff Fulks was standing nearby when he said it and he clearly wanted Plaintiff Fulks to hear him.

104. Mr. Smith also called Plaintiff Fulks a "loud mouth Jamaican" on or about November 2018.

105. On or about November 2018, Mr. Smith, while at Defendant's work place near Plaintiff Fulks, said Jamaica was the worst island in the Caribbean.

106. When Mr. Smith made derogatory comments about Jamaicans and about Plaintiff Fulks being Jamaican, Plaintiff Fulks told Mr. Smith she did not appreciate such comments and that they were offensive.

107. On a day where Mr. Smith was absent from work, Plaintiff Fulks made Assistant Manager Jennifer Lopez aware that Plaintiff Fulks believed that Mr. Smith should make the workplace more diverse because Mr. Smith was biased against hiring Jamaicans. Mr. Smith is aware of Plaintiff Fulks' aforementioned belief because he came to work the next day and openly tried to justify the preferential treatment he gives to non-Jamaican applicants in the hiring process.

108. As a result of Plaintiff Fulks openly opposing Mr. Smith's animus towards Jamaicans, Mr. Smith began to give baseless Written Coachings to Plaintiff Fulks in hopes of ending her employment with Defendant.

109. On or about the first week of December 2018, a customer came to the Pharmacy so early that the registers had no money in them. Thus, Rochelle Lucien ordered Plaintiff Fulks to walk the customer to register 11 which is in Wal-Mart's store and not in the pharmacy.

110. Ms. Lucien also told Plaintiff Fulks to go get money for the pharmacy register after Plaintiff Fulks walked the customer to register 11.

111. Plaintiff Fulks did as she was ordered and walked the customer to register 11 and then got money for the pharmacy register.

112. As a consequence of opposing Mr. Smith's discriminatory comments about Jamaicans and Plaintiff Fulks being Jamaican, and opposing the aforementioned discriminatory Coaching write-ups, Plaintiff Fulks was terminated from her employment on or about December 14, 2018.

113. On or about December 14, 2018, a person who does not manage the pharmacy and whom Plaintiff Fulks did not have much interaction with, Assistant Store Manager R.D., called her to a back room to tell her that her employment was terminated.

114. The pre-textual excuse that R.D. used when terminating Plaintiff Fulks' employment is that Plaintiff Fulks tried to have a customer serviced at register 11. Ms. Jennifer Lopez witnessed this conversation.

115. R.D.'s excuse for terminating Plaintiff Fulks' employment is pre-textual and Plaintiff Fulks' employment termination was in retaliation for resisting national origin discrimination.

116. After Jennifer Woolsey finalized Plaintiff Fulks' employment termination, Defendant changed its pre-textual excuse for terminating Plaintiff Fulks' employment.

117. Defendant's changed pre-textual excuse is the false claim that Plaintiff Fulks cut in line in front of three customers to purchase personal items on or about December 14, 2018.

118. In reality, Plaintiff Fulks' did not buy personal items on the day in question and she did not cut in front of any customers.

119. Defendant's changed excuse is pre-textual and Plaintiff Fulks' employment termination was in retaliation for resisting national origin discrimination.

120. Title VII of the Civil Rights Act outlaws retaliation, which occurs when an employer discriminates against an employee because that person has opposed any practice

which is an unlawful employment practice.

121.	It is an unlawful employment practice to give Plaintiff Fulks Written Coachings due to her national origin, and frequently making disparaging remarks about Plaintiff Fulks' national origin in order to create a hostile work environment for Plaintiff Fulks based on her national origin.

122.	Prior to termination, Plaintiff opposed Mr. Smith's coaching write-ups, derogatory comments about Jamaicans and derogatory comments about Plaintiff Fulks being Jamaican by telling Mr. Smith directly that he must stop.

123.	Defendant has no legitimate non-retaliatory, non-discriminatory reason for terminating Plaintiff's employment.

124.	Plaintiff is qualified for the position of pharmacy technician.

125.	As a result of the Defendant's unlawful retaliatory conduct of terminating Plaintiff Fulks' employment for resisting the aforementioned national origin discrimination, Plaintiff suffered mental anguish and embarrassment.

126.	At all times material, R.D., Fabiola Paulo, Jermaine Smith, Rochelle Lucien, Greg Nazareth, Jennifer Lopez, Dee, DJ, Keisha, Oderline Excellent, Valerie, Wesley, Jennifer Woolsey, Defendant's human resources, and Defendant's Ethics Helpline were acting within the scope of their employment with Defendant Wal-Mart.

127.	Plaintiff has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

128.	The EEOC issued a Notice of Right to Sue dated March 19, 2020. Plaintiff timely commenced this action.

WHEREFORE Plaintiff Sasha Fulks demands judgment against Defendant for compensatory damages, back wages, front pay, punitive damages, costs and attorneys' fees.

## JURY TRIAL DEMAND

Plaintiff Sasha Fulks demands a trial by jury on all issues so triable.

Date: Tuesday, April 21, 2020

Respectfully submitted,

_/s_ *Nnamdi Jackson*

Nnamdi S. Jackson
Fla. Bar No. 99804
The Law Office of Nnamdi S. Jackson, P.A.
2645 Executive Park Drive, suite 340
Weston, FL 33331
(954)670-1267
njackson@nsjlawoffice.com